UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RYAN G.,[1]

        Plaintiff,

    v.                               24-CV-424 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## DECISION AND ORDER

Plaintiff Ryan G. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the decision of the Commissioner of the Social Security Administration that he was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 9. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 11, 12. For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's cross motion.

_____

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's applications for Disability Insurance Benefits ("DIB"), filed on March 31, 2021, and Supplemental Security Income ("SSI"), filed on April 30, 2021.[2] Tr. 272–78.[3] Plaintiff's applications were initially denied, and he requested a hearing before an administrative law judge ("ALJ"). *Id.* at 166–75, 208. Following the hearing, at which Plaintiff was represented by counsel, ALJ Laura Olszewski issued a decision finding that Plaintiff was not disabled. *Id.* at 31–42. Plaintiff's request for Appeals Council review was denied, after which Plaintiff timely commenced this action. *Id.* at 1–3; Dkt. 1.

## LEGAL STANDARDS

## I.    DISTRICT COURT REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive

---

[2] Plaintiff applied for both DIB and SSI. To receive DIB, a claimant must show that he became disabled while meeting the Act's insured status requirements. *See* 42 U.S.C. § 423(d)(1)(A); *Schillo v. Kijakazi*, 31 F.4th 64, 69–70 (2d Cir. 2022). SSI, on the other hand, "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level." *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (citation modified). The Social Security Administration uses the same five-step evaluation process to determine adult eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

[3] The filings at Dkts. 6 and 7 are the transcript of the proceedings before the Social Security Administration. All references to Dkts. 6 and 7 are hereby denoted "Tr. ___."

when supported by substantial evidence. *See Biestek v. Berryhill*, 589 U.S. 97, 99 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation modified).

The Court does not determine *de novo* whether the claimant is disabled, but the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable basis of doubt about whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his or her disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II.   DISABILITY DETERMINATION

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. *Id.* §§ 404.1572, 416.972. If the

3

ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. *Id.* §§ 404.1520(b), 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520(d), 416.920(d). If such criteria are met, then the claimant is declared disabled. *Id.* §§ 404.1520(d), 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(e), 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *Id.* §§ 404.1545, 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. *Id.* §§ 404.1560(b)(3), 416.960(b)(3). If the ALJ finds that the claimant is unable to

4

perform past relevant work, the analysis proceeds to the fifth and final step. *Id.* §§ 404.1520(g)(1), 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. *Id.* §§ 404.1560(c), 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given his RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

## I.   THE ALJ'S DECISION

To begin, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 31, 2020, his alleged onset date. Tr. 33. The ALJ also found that Plaintiff suffered from the following severe impairments: "attention deficit hyperactivity disorder; depressive disorder; anxiety disorder; and auditory processing disorder." *Id.* (citation modified). The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 34–36.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following limitations:

> [Plaintiff] can occasionally make work-related judgments and decisions. He can have occasional changes in the work setting.

> He can perform simple, routine, repetitive tasks. He can have occasional interaction with supervisors, coworkers[,] and the public.

*Id.* at 36.

The ALJ then found that Plaintiff was unable to perform any past relevant work. *Id.* at 40–41. But the ALJ concluded that Plaintiff was not disabled because his age, education, work experience, and RFC allowed him to perform jobs existing in significant numbers in the national economy. *Id.* at 41–42. As such, according to the ALJ, Plaintiff had not been under a disability from his alleged onset date through the date of the decision. *Id.* at 42.

## II.    PLAINTIFF'S ARGUMENT

Plaintiff argues that the ALJ erred in three ways. *See* Dkt. 9-1 at 16–30. First, Plaintiff argues that the ALJ failed to develop the record with treatment notes from Pamela Hughes, Ph.D. *Id.* at 17–21. Second, Plaintiff argues that the ALJ improperly formulated the RFC based on his lay interpretation of the evidence. *Id.* at 21–25. Finally, Plaintiff argues that the ALJ "mischaracterized the record, hyper-focused on activities of daily living, made speculative inferences about Plaintiff's sleep pattern and video-gam[e] playing, and failed to properly account for Plaintiff's reliance on medications." *Id.* at 25–30. For the reasons that follow, the Court disagrees.

## III.    ANALYSIS

### A. The ALJ did not err with respect to her duty to develop the record.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative duty to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1983) (citation modified); *see also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) (An ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." (citation modified)).

Plaintiff argues that the ALJ failed to develop the record with respect to notes of Plaintiff's treatment with Dr. Hughes. *See* Dkt. 9-1 at 17–21. But "[w]here a record is otherwise complete, missing notes do not necessarily create an obvious gap in the record that an ALJ has to develop." *David C. v. Comm'r of Soc. Sec.*, 2024 WL 4347151, at *15 (W.D.N.Y. Sept. 30, 2024). And Plaintiff has not shown that any missing treatment notes indicate such a gap by, for example, making "an[] offer of proof concerning what supportive findings the alleged notes might contain." *Id.*; *see Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 43 (2d Cir. 2020) (summary order) ("[A]lthough Curley asserts that these records are critical, Curley did not provide them to the district court and does not describe their contents.").

7

Moreover, while an ALJ's duty to develop the record exists "even when a claimant is represented by counsel," *Perez*, 77 F.3d at 47, that duty is lessened when counsel assures the ALJ that the record is complete, *see, e.g.*, *Curley*, 808 F. App'x at 43 (summary order) ("Curley's argument that the ALJ failed to develop the record . . . fails. When the ALJ discussed the medical records with Curley and his attorney at the beginning of the hearing and asked whether anything was missing, Curley did not state that he had any [additional] records that needed to be obtained."); *Lucius R. v. O'Malley*, 2024 WL 1200181, at *16 (D. Conn. Jan. 22, 2024) ("An ALJ's duty to develop the record is not unlimited; he is required only to take all reasonable steps to do so, and he has taken reasonable steps to complete the medical record when he asks the claimant's attorney at a hearing if the medical records are complete, and the attorney answer affirmatively." (citation modified)). Plaintiff's counsel did that here, confirming that "the record [wa]s complete and c[ould] be closed." Tr. 55. Accordingly, faulting the ALJ for failing to obtain additional records would be improper. *See David C.*, 2024 WL 4347151, at *13 ("[A]s a matter of fairness and judicial efficiency, counsel should not be permitted to game the system by asserting that the record is complete, and then, once an[] adverse decision has issued, crying foul.").

In sum, the complete record, including the opinion evidence, was sufficient to support the ALJ's findings. *See DeChirico v. Callahan*, 134 F.3d 1177, 1182–83 (2d Cir. 1998) (where "substantial evidence in the record" supported the claimant's account, "[b]ut there was also substantial evidence in the record from which the

ALJ could have reasonably" ruled against the claimant, "we cannot say that the ALJ's finding . . . was unsupported by the record."). The ALJ, therefore, did not err with respect to her duty to develop the record.

**B. The ALJ's RFC determination was supported by substantial evidence.**

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). That does not mean that an RFC must "perfectly correspond with any of the opinions of medical sources cited in [an ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d Cir. 2024). Rather, so long as an ALJ considers all the medical evidence and appropriately analyzes any medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. § 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis . . . regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Here, there was ample evidence in the record to support the ALJ's RFC findings. For example, the ALJ considered the opinion of Janine Ippolito, Psy.D. *See* Tr. 38. Dr. Ippolito opined that Plaintiff had no limitations in understanding, remembering, or applying simple and complex instructions; sustaining concentration; performing at a consistent pace; sustaining an ordinary routine and

regular work attendance; maintaining personal hygiene; dressing appropriately; and being aware of normal hazards and taking appropriate precautions. *Id.* at 611–12. Dr. Ippolito also opined that Plaintiff was mildly limited in using judgment to make work-related decisions and interacting appropriately with supervisors, coworkers, and the public and moderately limited in regulating emotions, controlling behavior, and maintaining well-being. *Id.* at 612. Dr. Ippolito concluded that Plaintiff's mental impairments "d[id] not appear to be significant enough to interfere with [his] ability to function on a daily basis." *Id.*

The ALJ found Dr. Ippolito's opinion "generally persuasive," explaining that it was "well supported by the results of [Dr. Ippolito's] examination and . . . generally consistent with the benign results of other examinations in the record." *Id.* at 38. The ALJ concluded, however, that Plaintiff "would experience greater limitation" than Dr. Ippolito found due to "low motivation and frequent descriptions of feeling distanced or disassociated from relationships in his life." *Id.*

The ALJ also considered the opinions of L. Dekeon, Ph.D., and J. May, Ph.D., both state agency psychiatric consultants. *See id.* at 39–40. Dr. Dekeon opined that Plaintiff had no limitation in understanding, remembering, or applying information and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. *Id.* at 96. Dr. Dekeon concluded that, "[b]ased on all available evidence, [Plaintiff] ha[d] [the mental RFC] for simple work in low contact settings." *Id.* at 97. Dr. May later reviewed the record and affirmed Dr. Dekeon's findings. *See id.* at 134–36.

10

The ALJ found Dr. Dekeon's and Dr. May's opinions to be "somewhat persuasive," as they were "supported by review and summary of the medical records, including the results of the consultative examination and the earlier psychological evaluation." *Id.* at 40. The ALJ found, however, that the moderate limitations in concentrating, persisting, or maintaining pace about which Drs. Dekeon and May opined were "not fully consistent with the developed record or [Plaintiff's] descriptions of his activities of daily living, including his ability to complete assigned household chores and tasks [and] his ability to focus on video games for hours at a time." *Id.*

The ALJ ultimately crafted an RFC that largely reflected the opinions of Drs. Ippolito, Dekeon, and May. *See id.* at 36. Indeed, whereas Drs. Dekeon and May found that Plaintiff was capable of "simple work in low contact settings," *id.* at 97, 136, the ALJ restricted Plaintiff to "simple, routine, repetitive tasks" with only "occasional interaction with supervisors, coworkers[,] and the public," *id.* at 36. Those restrictions likewise accounted for the limitations about which Dr. Ippolito opined. *See id.* at 611–12; *see also Denise Marie T.-W. v. Comm'r of Soc. Sec.*, 2024 WL 4162490, at *6 (W.D.N.Y. Sept. 12, 2024) ("Moderate limitations in some or all areas of mental functioning may be accounted for in an RFC by limiting a plaintiff to simple, routine work.").

Plaintiff essentially disagrees with the ALJ's weighing of the evidence. But it is not the function of this Court to re-weigh evidence or to determine *de novo* whether Plaintiff is disabled. *See Schaal v. Apfel*, 134 F.2d 496, 501 (2d Cir. 1998).

Because the ALJ's decision provides "an adequate basis for meaningful judicial review . . . and is supported by substantial evidence," there is no error. *Cichocki*, 729 F.3d at 177. Plaintiff's second argument, therefore, lacks merit.

### C. The ALJ considered appropriately Plaintiff's activities of daily living and other evidence in the record.

An ALJ must consider "the extent to which [a claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [a claimant's] symptoms affect [his or her] ability to work." 20 C.F.R. § 404.1529(a). This is a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). First, an ALJ must determine whether, based on objective medical evidence, a claimant's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *Id.*

The ALJ properly performed the two-step inquiry here. At step one, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms." Tr. 37. But at step two, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." *Id.*

Plaintiff argues that, in making that finding, the ALJ improperly focused on Plaintiff's activities of daily living. *See* Dkt. 9-1 at 25–30. But the ALJ was entitled—required, even—to consider those activities. *See Matta*, 508 F. App'x at 56; SSR 16-3p, 2017 WL 5180304, at *7. And the ALJ did so, noting that Plaintiff occasionally drives and makes deliveries for DoorDash; stays up late to watch television or play video games; manages his own personal care and grooming; assists with household chores and tasks; and sells unneeded items on eBay. Tr. 37.

Plaintiff takes issue with the ALJ's repeated references to his video-game playing. *See* Dkt. 9-1 at 27–28. But that was a result of Plaintiff's consistent reports to providers rather than any improper focus by the ALJ. For example, at a May 12, 2022, visit, Denise Giessert, M.D, noted that Plaintiff "spend[s] up to 36 hours at a time without needing sleep, playing video games and having a boost of energy." Tr. 802–04. At subsequent visits, Dr. Giessert likewise noted that Plaintiff "continues to stay up for many hours at a time throughout the night playing video games, *id.* at 798–800, and "has struggled with his sleep pattern where he is up for many hours at night playing video games," *id.* at 1084–86. Certainly, that evidence supported the ALJ's finding that Plaintiff could perform simple, routine, repetitive tasks. *See id.* at 36; *Smith v. Comm'r of Soc. Sec.*, 595 F. Supp. 2d 236, 238 (W.D.N.Y. 2009) (affirming an ALJ's finding that a claimant had the RFC to perform unskilled work, based in part on the claimant's video-game playing).

13

Plaintiff also argues that the ALJ improperly ignored Plaintiff's reliance on medication. *See* Dkt. 9-1 at 29–30. But the ALJ acknowledged that Plaintiff "participated in counseling with medication management and reports suggest [that it] was helpful." Tr. 35. And the ALJ noted that Plaintiff's sleep habits and fatigue improved with medication. *See id.* at 38. So rather than ignoring Plaintiff's reliance on medication, the ALJ considered Plaintiff's medication use and its impact on his RFC.

Moreover, the ALJ did not, as Plaintiff says, "simply reject[] Plaintiff's complaints of severe mental health limitations for being 'lifestyle choices.'" Dkt. 9-1 at 29. To the contrary, the ALJ considered all of the evidence in the record— including the opinion evidence—to conclude that Plaintiff was less limited than he claimed. As noted above, the ALJ considered the opinions of Drs. Dekeon and May, each of whom found Plaintiff capable of performing "simple work in low contact settings." Tr. 97, 136. And by restricting Plaintiff to exactly that, *see id.* at 36, the ALJ did not err, *see Matta*, 508 F. App'x at 56.

In sum, the ALJ considered appropriately Plaintiff's activities of daily living and the other evidence in the record. Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *id.*, and because the ALJ did that, her decision was supported by substantial evidence, and this Court will not second-guess it, *see Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may adequately support contrary findings on particular issues, the ALJ's factual

14

findings must be given conclusive effect so long as they are supported by substantial evidence."). Plaintiff's final argument, therefore, lacks merit as well.

**CONCLUSION**

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 11) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 9). The Clerk of the Court shall close this case.

SO ORDERED.

Dated:    July 21, 2026
          Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

15